NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| PATRICIA J. THOMPSON, | Civil Action No.: 2:16-cv-2953 (CCC) |
| Plaintiff, | |
| v. | |
| | OPINION |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**CECCHI, District Judge.**

I. **INTRODUCTION**

Before the Court is Plaintiff Patricia J. Thompson's ("Plaintiff") appeal seeking review of a final determination by the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability benefits ("DIB") and supplemental social security income ("SSI") under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act ("SSA"). The issue to be decided is whether the Commissioner's denial of benefits is supported by substantial evidence. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed in part, vacated in part, and the matter is remanded for further proceedings consistent with this Opinion.

II. **BACKGROUND**

A. **Procedural Background**

Plaintiff applied for DIB and SSI in June 2012, alleging disability as of November 30, 2009. Tr.[1] at 217-225. The applications were denied initially on July 30, 2010, and upon

---

[1] "Tr." refers to the certified record of the administrative proceedings. ECF No. 6.

reconsideration on December 16, 2010. *Id.* at 119-128. On June 20, 2012, a hearing was held before ALJ Dennis O'Leary. *Id.* at 27-58. ALJ O'Leary issued a decision on July 6, 2012 finding Plaintiff was not disabled. *Id.* at 100-08. Plaintiff requested review of the decision and the Appeals Council remanded on November 6, 2013. *Id.* at 114-17. A second hearing was held before ALJ O'Leary on March 24, 2014. *Id.* at 13. On June 3, 2014, ALJ O'Leary issued a decision finding Plaintiff was not disabled as defined by the SSA. *Id.* at 21. Plaintiff requested review of the decision and the Appeals Council denied the request on March 23, 2016. *Id.* at. at 1. On May 25, 2016, Plaintiff instituted this action. ECF No. 1.

**B.     Factual Background**

Plaintiff was born on April 10, 1974. Tr. at 19. Plaintiff has a high school education, and has work experience as a cashier and babysitter. *Id.* Plaintiff claimed disability due to twenty different conditions, including: severe obesity, depression, hypertension, bi-polar mood swings, asthma, fatigue, ADHD, low back pain, and anxiety. *Id.* at 274. During the hearing, Plaintiff testified that her aunt goes to her house on a daily basis to help clean, wash clothes, cook, and bathe Plaintiff. *Id.* at 44-46. Once a month, Plaintiff also takes a bus to a therapy session for her "mood and depression," for which she is prescribed Abilify. *Id.* at 42, 53.

Plaintiff has three children who were removed from her care in December 2005. *Id.* at 304. Plaintiff said they were taken away "due to her selling drugs and being incarcerated at that time."[2] *Id.* at 334. The children's father is incarcerated, and they live with Plaintiff's aunt and cousin who are their legal guardians. *Id.* at 56, 304. Plaintiff stated that her aunt and cousin bring the children over to visit on a weekly basis. *Id.* at 56.

---

[2] Plaintiff was also incarcerated for eighteen months beginning in 1996 and has a history of marijuana and ecstasy use. *Id.* at 50-51.

2

Plaintiff last worked as a babysitter in 2010, but stated she cannot work or leave the house because she has low self-esteem due to her weight.[3] *Id.* at 39, 47-48. Plaintiff indicated that she participates in research studies, in which she is paid to test products on her skin to see if there is a reaction. *Id.* at 73-75.

In September 2007, Plaintiff underwent a psychological examination by Dr. Eric Kirschner with the New Jersey Division of Youth and Family Services. *Id.* at 304-13. Dr. Kirschner reported Plaintiff was "an intellectually limited individual with long-standing problems of poorly managed anger and hostility." *Id.* at 313. Dr. Kirschner also indicated that Plaintiff "completed the Shipley Institute of Living Scale, which is a brief measure of intellectual functioning. Her score of 65 places her in the deficient range for overall intellectual abilities." *Id.* at 312.

In November 2009, Plaintiff was referred to the Mental Health Clinic of Passaic, where Dr. Daniel Bascara examined her. *Id.* at 334. Dr. Bascara diagnosed Plaintiff with: "Mood disorder NOS, rule out Bipolar Disorder, depressed; Impulse Control Disorder NOS, suspect Adult Attention Deficit Hyperactivity Disorder; history of Cannabis Abuse; history of Learning Difficulties." *Id.* at 336. Dr. Bascara also indicated Plaintiff had a "history of antisocial behaviors (selling drugs); suspect borderline intellectual functioning or mild mental retardation." *Id.* Dr. Bascara prescribed Plaintiff Abilify at bedtime for mood stability and sleep. *Id.* at 337. Plaintiff appears to have treated with Dr. Bascara from 2009 through 2012. *Id.* at 18.

In June 2011, Plaintiff had an MRI which revealed "disc herniation with no nerve root compression at L4-L5 and L5-S1. *Id.* at 18, 464. In November 2013, Dr. Syed M. N. Rizvi wrote a letter which indicated that Plaintiff "is unable to hold a job" because of her weight issues and

---

[3] Plaintiff testified that she is five feet, nine inches tall, and weighed 436 pounds at the first hearing, and 422 pounds at the second hearing. *Id.* at 40, 66.

3

recommended that Plaintiff have "lap band surgery done to control her weight." *Id.* at 467.

In July 2010, medical consultant, Dr. Clara Castillo-Velez completed a psychiatric review form for Plaintiff which indicated Plaintiff suffered from an affective disorder, had decreased energy and feelings of guilt or worthlessness, bipolar syndrome, mild limitations in daily living and social functioning, and moderate difficulty in concentration, persistence, or pace. *Id.* at 344-60. In the same month, medical consultant Joseph Micale found Plaintiff was limited to less than the full range of light work based on her morbid obesity, asthma, and hypertension. *Id.* at 362-69.

## III. LEGAL STANDARD

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential

4

standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

### B. Determining Disability

Pursuant to the SSA, in order to be eligible for benefits, a plaintiff must show she is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the plaintiff's age, education, and work experience, disability will be evaluated by the plaintiff's ability to engage in her previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

### C. Sequential Evaluation Process

The Social Security Administration follows a five-step, sequential evaluation to determine whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the plaintiff is currently engaged in gainful activity. *Sykes*, 228 F.3d at 262. Second, if she is not, the ALJ determines whether the Plaintiff has an impairment that limits her ability to work. *Id.* Third, if she has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. *Id.* If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of her impairment. *Id.* at 263. Fourth, the ALJ must consider whether the plaintiff's RFC is enough to perform her past relevant work. *Id.* Fifth, if her RFC is not enough, the ALJ must determine whether there is other work in the national economy the plaintiff can perform. *Id.*

The evaluation continues through each step unless it is determined at any point the plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The plaintiff bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. *Sykes*, 228 F.3d at 263. Neither party bears the burden at step three. *Id.* at 263 n.2.

## IV. DISCUSSION

### A. Summary of the ALJ's Findings

At step one, the ALJ found Plaintiff met the insured status requirements of the SSA. Tr. at 15. The ALJ found that it was not necessary to determine if Plaintiff had engaged in substantial gainful work activity since the application date because there exists a separate, valid basis for denying her application. *Id.* at 16. At steps two and three, the ALJ found Plaintiff's impairments

of morbid obesity, hypertension, asthma, and affective mood disorder were "severe," but not severe enough to meet, either individually or in combination, any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.* at 16-17.

The ALJ concluded Plaintiff had the residual functional capacity ("RFC") to perform the exertional demands of sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a), except Plaintiff "can never climb ladders, ropes and scaffolds; can never crawl; can occasionally perform climbing o[n] ramps and stairs, balancing, stooping, kneeling and crouching; and must avoid concentrated exposure to wetness and humidity and moderate exposure to fumes, odors, dusts, gases and poor ventilation." *Id.* at 17. The ALJ also found Plaintiff is "limited to performing tasks requiring only simple workplace judgment." *Id.* To make this conclusion, the ALJ considered all of Plaintiff's symptoms and their consistency with the evidence. *Id.* Specifically, the ALJ considered Plaintiff's testimony in which she stated she does not exercise or watch her diet, is able to get around by public transportation, and sees a therapist once a month for depression and anxiety. *Id.* at 18. The ALJ also took into consideration the medical evidence of Plaintiff's disc herniation and morbid obesity and the reports from the medical consultants and Dr. Bascar. *Id.* at 18-19.

At step four, the ALJ found Plaintiff was incapable of performing past relevant work as a cashier and babysitter. *Id.* at 19. At step five, the ALJ found there were jobs in significant numbers in the national economy that Plaintiff could perform. *Id.* at 20. The ALJ found this using the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P., app. 2. *Id.*

### B. Analysis

Plaintiff makes the following arguments in support of her contention that the ALJ's decision should be remanded: (1) the ALJ erred at step two by failing to explain why Plaintiff's

disc herniation, spinal stenosis, and additional mental impairments were not "severe"; (2) the ALJ erred at step three by failing to combine and compare Plaintiff's severe impairments, and Plaintiff is presumptively disabled under two separate listings; (3) the RFC analysis is not sufficiently explained; and (4) the Commissioner did not meet its burden at step five. *See generally* Plaintiff's Brief ("Pl. Br.") ECF No. 11. The Court will address each argument in turn.

### 1. Step Two

Plaintiff contends the ALJ's decision at step two is not supported by substantial evidence because it does not acknowledge or discuss Plaintiff's diagnoses of disc herniation, spinal stenosis and mental impairments as found by Dr. Kirschner. Pl. Br. at 24. The Commissioner contends that the ALJ was simply asked to "further evaluate" Plaintiff's step two impairments, and was not required by the Appeals Council to find these impairments were severe. Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def. Br."), ECF No. 14 at 11). Further, the Commissioner argues "a mere diagnosis of impairment is insufficient to establish disability," and even assuming Plaintiff did have a spinal impairment, the state agency physician nevertheless indicated Plaintiff "had the residual functional capacity to perform light work." *Id.* at 9-10.

The second step of finding a severe impairment is a "*de minimis* test obligating the [Plaintiff] to show that [her] impairment is not so slight that it could not interfere with the ability to work." *Thomas v. Comm'r of Soc. Sec.*, No. 12-6251 ES, 2013 WL 6904071, at *5 (D.N.J. Dec. 31, 2013) (citing *Bowen v. Yuckert*, 482 U.S. 137 (1987)). Social Security Ruling ("SSR") 85-28 explains that "[i]nherent in a finding of a medically not severe impairment . . . is the conclusion that the individual's ability to engage in substantial gainful activity is not seriously affected. Before this conclusion can be reached however an evaluation of the effects of the impairment on the person's ability to do basic work activities must be made." 1985 SSR LEXIS 19, at *9-10 (Jan. 1, 1985). "A determination that [an] impairment is not severe requires a careful

8

evaluation of the medical findings which describe the impairment and an informed judgment about its limiting effects on the individual's physical and mental abilities to perform basic work activities." *Id.* at *10.

The Third Circuit requires that "[a]n impairment . . . can be found 'not severe' only if the evidence establishes a slight abnormality . . . which ha[s] 'no more than a minimal effect on an individual's ability to work.'" *Newell v. Comm'r*, 347 F.3d 541, 546 (3d Cir. 2003) (citing SSR 85-28, 1985 SSR LEXIS 19 at *6-7). In this case, although Plaintiff was merely directed by the Appeals Council to "further evaluate" Plaintiff's severe impairments at step two, *see* Tr. at 115, the ALJ failed to do so with respect to Plaintiff's spinal impairments and the mental impairments found by Dr. Kirschner. Specifically, the ALJ failed to explain why Plaintiff's spinal impairments do not affect her ability to perform work activities, or why the medical evidence does not support Dr. Kirschner's findings. As the ALJ offered no explanation as to why she rejected these diagnoses as severe impairments, this Court cannot offer any meaningful judicial review. *See Wilson v. Astrue*, No. 08-00007, 2009 WL 793039, at *14 (W.D. Pa. March 24, 2009) (remanding the case because the ALJ failed to "articulate adequately," at step two, his reasons for discounting certain evidence). This Court remands the case to the ALJ to provide an explanation at step two as to Plaintiff's spinal impairments and Dr. Kirschner's mental diagnoses.

### 2. Step Three

The Listings assessed at step three describe impairments the Commissioner considers severe enough to prevent an individual from engaging in any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 416.925(a). The Listings describe impairments giving rise to presumptive disability, i.e., if an individual meets a listing, she is considered to be disabled without consideration of whether she can perform work activity. *Id.* § 416.920(a)(4)(iii); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citations omitted). To be found presumptively disabled, a

9

plaintiff must show all of the criteria for a listing have been met. 20 C.F.R. § 416.925(c)(3); *Zebley*, 493 U.S. at 530. In evaluating the ALJ's decision at step three, this Court looks at the ALJ's decision as a whole. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) ("[The case law] does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of [the case law] is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review.").

Plaintiff argues this case should be remanded because Plaintiff is presumptively disabled, as she meets Listings 1.04 and 12.05. Pl. Br. at 31-32. Listing § 1.04 deals with disorders of the spine. *See* 20 C.F.R. pt. 404, Subpt. P, App. 1 § 1.04. As the Court has previously remanded on step two regarding Plaintiff's spinal impairments, the ALJ should further consider whether Listing § 1.04(c) is met on remand.

To meet Listing 12.05(A) and 12.05(B), Plaintiff must show that "evidence about [her] current intellectual and adaptive functioning and about the history of [her] disorder demonstrates or supports the conclusion that the disorder began prior to [her] attainment of age 22." *See* 20 C.F.R. pt. 404, Subpt. P, App. 1 § 12.05. Plaintiff argues she has met this Listing based on a score from a test administered when she was thirty-three years old. *See* Pl. Br. at 31 (citing Tr. at 312). The Court finds Plaintiff has not met her burden to show she meets this Listing.

Next, Plaintiff argues the Court should remand due to the ALJ's failure to evaluate Plaintiff's obesity in accordance with Social Security Ruling ("SSR") 02-01p, 2002 SSR LEXIS 1 (Sept. 12, 2002).[4] The Third Circuit addressed this issue in *Diaz v. Commissioner of Social Security*, where the ALJ found obesity was a severe impairment at step two, but failed to assess

---

[4] Plaintiff argues the ALJ did not comply with SSR 00-3p. Pl. Br. at 29. However, in 2002, the Commission implemented SSR 02-01p, which superseded SSR 00-03p. 2002 SSR LEXIS 1 (Sept. 12, 2002). Therefore, this Court will address the ALJ's compliance with the relevant SSR.

10

the impact of obesity on the plaintiff's other impairments at step three. 577 F.3d 500, 503 (3d Cir. 2009). The court determined that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Id.* at 504. In assessing the impact of claimant's obesity, the ALJ must discuss the evidence and explain her reasoning in a manner that would be "sufficient to enable meaningful judicial review." *Id.* As the Court has previously remanded on step two regarding Plaintiff's spinal impairments, the Court will also remand at step three so that the ALJ may further evaluate the effect, if any, of Plaintiff's obesity.

### 3. The RFC Analysis is Sufficiently Explained

Plaintiff's argument as to the RFC analysis appears to be that the "RFC for sedentary work is never explained." Pl. Br. at 41. The Court finds the ALJ's RFC analysis was supported by substantial evidence.

An RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996). Under the substantial evidence standard of review, the issue is whether sufficient evidence reasonably supports the ALJ's analysis. *See Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Here, the ALJ explained that the medical consultant found Plaintiff was limited to "less than the full range of light work" based on her morbid obesity, asthma, and hypertension. Tr. at 18. The ALJ went on to explain that "given [Plaintiff's] disc herniation as well as the symptoms that flow from [her] morbid obesity," Plaintiff has an RFC of "less than the full range of sedentary work." *See id.* at 19. The Court finds that based upon the ALJ's consideration of the medical consultant's opinion, Plaintiff's spinal impairments, and Plaintiff's morbid obesity, the RFC analysis was supported by substantial

11

evidence.

### 4. The Commissioner Did Not Meet Its Burden at Step Five

The Commissioner may meet its burden of proof at step five by relying exclusively on the Medical-Vocational Guideline grids promulgated by rule-making by the SSA when a plaintiff suffers exclusively from exertional impairments.[5] *See Sykes v. Apfel*, 228 F.3d 259, 267 (3d Cir. 2000); 20 C.F.R. pt. 404, subpt. P, app. 2 (1999). When a plaintiff suffers from non-exertional[6] demands, the Commissioner may meet its burden at step five by: (1) eliciting testimony from a vocational expert; (2) providing notice to the plaintiff that the Commissioner will take the position non-exertional limitations do not significantly erode the occupational base; or (3) relying upon an SSR "that includes a statement explaining how the particular nonexertional limitation(s) . . . affects the claimant's occupational job base," and by citing to that SSR. *See Allen v. Barnhart*, 417 F.3d 396 (2005) (citing AR 01-1(3), 2001 WL 65745, at *4 (S.S.A)).

Plaintiff argues that that ALJ improperly relied upon SSRs to account for her non-exertional impairments and that her mental impairments of a low IQ and "moderate difficulties in concentration, persistence, and pace" require the testimony of the VE. *See* Pl. Br. at 42. At steps two and three, the ALJ found that Plaintiff had a severe impairment of affective mood disorder, that she has moderate difficulties in concentration, persistence, and pace, moderate restrictions in daily living, and mild difficulties in maintaining social function. Tr. at 16. At step five, to account for Plaintiff's non-exertional impairments, the ALJ explained that SSR 85-15 states "the basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained

---

[5] Exertional impairments are those that affect the claimant's "ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569(b).

[6] Non-exertional impairments are all other impairments that do not affect a claimant's ability to meet the strength demands of jobs. 20 C.F.R. § 404.1569(c)(1).

basis) to understand, carry out and remember simple instructions, to respond appropriately to supervision, coworkers and usual work situations and to deal with changes in a routine work setting." Tr. at 20. The ALJ went on to explain that "the evidence does not demonstrate a substantial loss of these abilities." *Id.*

In *Allen v. Barnhart*, the Third Circuit explained that the ALJ must identify and connect Plaintiff's specific non-exertional limitations and connect them to the SSR he relies upon. 417 F.3d at 406. Moreover, the *Allen* Court held that the ALJ must reference all of the non-exertional limitations presented by the medical evidence, and the ALJ "must be crystal-clear that the SSR is probative as to the way in which the non-exertional limitations impact the ability to work." *Id.* at 407.

Here, the Court finds the Commissioner has not met its burden at step five, as it has not connected all of Plaintiff's non-exertional limitations to a specific SSR to support its conclusion that Plaintiff's limitations would not affect her occupational base. Specifically, the ALJ has not connected Plaintiff's limitations of affective mood disorder, moderate difficulties in concentration, persistence, and pace, moderate restrictions in daily living, and mild difficulties in maintaining social function to a specific SSR. Upon remand, the ALJ should either obtain testimony from a vocation expert to meet its burden at step five, or specifically connect each of Plaintiff's non-exertional limitations to an SSR to support its conclusion that Plaintiff's occupational base will not be affected.

## V. CONCLUSION

For the foregoing reasons, the Court will affirm in part and vacate in part the ALJ's decision and remands this case for further administrative proceedings consistent with this Opinion. An appropriate order accompanies this Opinion.

DATED: September 15, 2017

_____
**CLAIRE C. CECCHI, U.S.D.J.**